SWORDS, RECEIVER, APPELLANT, *v.* SIMINEO, COUNTY TREASURER, RESPONDENT.

(No. 5,250.)

(Submitted June 1, 1923. Decided June 30, 1923.)

[216 Pac. 806.]

*Taxation—Special Improvements—Rural Improvement Districts — National Banks — Exemption — Complaint — Insufficiency.*

Special Improvements—Rural Improvement Districts—National Banks—Exemption—Complaint—Insufficiency.

1. In an action by the receiver of a national bank to recover an assessment paid under protest for improvements in a rural improvement district under Chapter 156, Laws of 1917, on the ground that the bank was a "mandatory" of the government and therefore exempt, complaint *held* insufficient for failure to allege that the property was excluded from liability in the resolution of intention to create the district or that plaintiff acquired the property prior to the time it was passed by the board of county commissioners.

Same—Assessments—When Owner Liable to Payment.

2. An owner of property in a special improvement district cannot sit by and see improvements made benefiting his property and increasing its value and then refuse to pay for them.

[68 Mont. 164.]

**Statutes and Statutory Construction—Rule.**

3. In the construction of a statute the courts must look to the language employed and the object sought to be attained by its enactment.

**Special Improvements—National Banks not Exempt from Assessment.**

4. *Held,* that a national bank is not a "mandatory" of the government within the meaning of Chapter 156, Laws of 1917, and therefore not exempt from payment of special assessments for improvements in a rural improvement district authorized by that Act.

**Same—Exemption—Burden on Party Claiming It.**

5. The burden is upon the party claiming an exemption from taxation to show an exception in his favor, written in the law in express terms or clearly implied from the language employed.

**Same—Assessments not Taxes.**

6. Special improvement assessments are not "taxes" and therefore the contention that such an assessment having been computed upon the area basis and not upon value it was invalid under section 5219, Fed. Stats. Ann., providing that "Nothing herein shall be construed to exempt the real property of associations from either state, county, or municipal taxes, to the same extent, according to its value, as other real property is taxed," has no merit.

**Same—Effect of Repeal of Act Under Which Authorized, on Right to Make Levy of Assessment.**

7. *Held,* that the fact that the Act under which a special improvement was created was repealed, the repealing Act containing no saving clause, did not deprive the board of county commissioners of authority to levy an assessment to defray the cost of the improvement, especially where the manner of levying the assessment was the same under both Acts, it being sufficient if the board was empowered by some law to make the levy and made it in the prescribed manner.

*Appeal from District Court, Yellowstone County; Robert C. Stong, Judge.*

ACTION by George W. Swords, as receiver of the First National Bank of Billings, against J. S. Simineo, Treasurer of the County of Yellowstone. Judgment for defendant and plaintiff appeals. *Affirmed.*

*Mr. Geo. W. Pierson* and *Mr. Geo. W. Swords,* for Appellant, submitted a brief; *Mr. Pierson* argued the cause orally.

The property involved belonging to a federal bank at the time of the levying of the assessment, and particularly as it was then being administered by the Treasury Department, the board should have omitted the land from the assessment. (Rev. Codes, sec. 4585.) "It is settled law that a state can impose such a tax only upon a national bank as is authorized

by the federal law.'' (*Dennis* v. *First Nat. Bank,* 55 Mont. 448, 178 Pac. 580.) The immunity extends to special assessments. (*Ford* v. *Great Falls,* 46 Mont. 292, 127 Pac. 1004.)

A receiver of a national bank appointed by the comptroller of the currency is an officer and agent of the United States. (*Ex parte Chetwood,* 165 U. S. 443, 41 L. Ed. 782, 17 Sup. Ct. Rep. 385 [see, also, Rose's U. S. Notes].)

While the United States, through one of its officers, is carrying out the terms of the statute, it ought to be self-evident a state agent is without authority to command the cash of the bank must be diverted to improve lands of the bank by way of special assessment. ''The states have no power by taxation, or otherwise, to retard, impede, burden, or in any manner control the operations of the constitutional laws enacted by Congress to carry into execution the powers vested in the general government.'' (*Weston* v. *Charlston,* 2 Pet. (U. S.) 449, 7 L. Ed. 481.) The receiver is entitled to take the benefits secured by all federal law applicable to national banks. Applied in a tax case. (*Rosenblatt* v. *Johnston,* 104 U. S. 462, 26 L. Ed. 832 [see, also, Rose's U. S. Notes].) The power of state to tax federal agencies was early denied in *McCullough* v. *Maryland,* 4 Wheat. (U. S.) 316, 4 L. Ed. 579 [see, also, Rose's U. S. Notes]. (See, also, *Dennis* v. *First Nat. Bank of Great Falls,* 55 Mont. 448, 178 Pac. 580; *Davis* v. *Elmira etc. Bank,* 161 U. S. 275, 40 L. Ed. 700, 16 Sup. Ct. Rep. 502 [see, also, Rose's U. S. Notes]; *Austin* v. *Board of Aldermen,* 74 U. S. (7 Wall.) 694, 19 L. Ed. 224 [see, also, Rose's U. S. Notes].)

The argument was advanced in the lower court that as the provisions of our state Constitution regulating taxation do not apply to special assessments, the federal statute does not apply. But any state interference is prohibited. (*Farmers' Nat. Bank* v. *Dearing,* 91 U. S. 29, 23 L. Ed. 196; *People* v. *Weaver,* 100 U. S. 539, 25 L. Ed. 705 [see, also, Rose's U. S. Notes].) It was further urged as the receiver did not protest against the construction of the improvements he had waived his right to question the levy. The answer is if the property was not

liable therefor, a protest was not necessary. (*City of Lewistown* v. *Warren*, 52 Mont. 356, 157 Pac. 954.)

*Mr. Wellington D. Rankin*, Attorney General, *Mr. Frank Woody*, Assistant Attorney General, and *Mr. John B. Tansil*, County Attorney of Yellowstone County, for Respondent, submitted a brief; *Mr. Woody* argued the cause orally.

If it was the intention of the legislature that the word "mandatory," as used in section 4585, should include national banks, so that their real property would be exempted from assessments for local or special improvements, then because of the fact that all national banks are owned by private individuals, none being owned by the United States, and the profits derived from the use of their entire property, real and personal, going wholly to such private individuals, none going to the United States, the exemption of such real property would exempt from such assessments certain property used for private profit and gain while throwing a greater burden on other property used for such purposes, while the benefits would be the same to all, and would result in the taking of property without due process of law in violation of section 1 of the fourteenth amendment to the Constitution of the United States and of section 27 of Article III of the Montana Constitution, and would also be the taking or damaging of private property for public use without just compensation having been first made to the owner, in violation of section 14 of Article III of our Constitution. (1 Page & Jones Taxation by Assessment, 183–195.)

Counsel fails to distinguish between "taxes" and "assessments" as such words are used in Constitutions and statutes. He proceeds on the theory that all impositions levied against property are taxes whether they be for the purpose of raising general revenue to defray the cost of government, or to pay for the making of improvements which add to the value of the property upon which imposed.

That they are not, see Page & Jones, *supra*, 16–18, 63; 2 Cooley on Taxation, 1153–1155; *Boston Asylum* v. *Charles*, 27 Ind. App. 639, 62 N. E. 961; *In re Walker Irr. Dis.*, 44 Neb. 321, 195 Pac. 327. And this court has held in at least two cases that assessments for special improvements are not taxes, within the general meaning of that term as used in our Constitution and statutes. (*City of Kalispell* v. *School District*, 45 Mont. 221, Ann. Cas. 1913D, 1101, 122 Pac. 742; *Billings Sugar Co.* v. *Fish*, 40 Mont. 256, 20 Ann. Cas. 264, 26 L. R. A. (n. s.) 973, 106 Pac. 565.) And it has been almost uniformly held that constitutional and statutory provisions exempting property from taxation have reference only to taxes for general purposes and do not apply to assessments for improvements, and property which may be exempt from general taxation is still subject to assessment for improvements. (1 Cooley on Taxation, 362; *Illinois Cent. Ry.* v. *Decatur*, 147 U. S. 190, 37 L. Ed. 132, 13 Sup. Ct. Rep. 293; *Mercantile Nat. Bank* v. *City of New York*, 121 U. S. 138, 30 L. Ed. 895, 7 Sup. Ct. Rep. 826 [see, also, Rose's U. S. Notes].)

The laws existing at the time a contract is entered into enter and become a part of the contract in such a way that the obligation of the contract cannot thereafter be in any way impaired or its fulfillment in any way hampered or obstructed by a change in the law. (*Louisiana* v. *Pillsbury*, 105 U. S. 278, 26 L. Ed. 1090; *Ralls County Court* v. *United States*, 105 U. S. 733, 26 L. Ed. 1120; *Wolff* v. *New Orleans*, 103 U. S. 358, 26 L. Ed. 395; *Moore* v. *Otis*, 275 Fed. 747; *Mobile* v. *Watson*, 116 U. S. 289, 29 L. Ed. 620, 6 Sup. Ct. Rep. 398 [see, also, Rose's U. S. Notes]; *Moore* v. *Gas Securities* Co., 278 Fed. 111; *Seibert* v. *United States*, 122 U. S. 284, 30 L. Ed. 1161, 7 Sup. Ct. Rep. 1190; *City of Cleveland* v. *United States*, 166 Fed. 677, 93 C. C. A. 274; *City of Austin* v. *Cahill*, 99 Tex. 172, 88 S. W. 542; *McCless* v. *Meekins*, 117 N. C. 34, 23 S. E. 99; *Benshoof* v. *City of Iowa Falls*, 175 Iowa, 30, 156 N. W. 898; *City of Spokane* v. *Browne*, 8 Wash. 317, 36 Pac. 26; *Crawford Tp.* v. *Hedrick*, 9 Ind. App. 691, 36 N. E. 771.)

MR. CHIEF COMMISSIONER FELT prepared the opinion for the court.

This action was brought by the plaintiff to recover an assessment levied to pay the costs of improvements within a rural improvement district, paid under protest. A general demurrer to the complaint was sustained. The plaintiff elected to stand upon his original complaint and judgment was entered against him. He appeals from this judgment.

The complaint alleges that he is the receiver of the First National Bank of Billings, Montana, a national banking association organized and existing under and by virtue of the laws of the United States, and during all of the times mentioned in the complaint is and was a mandatory of the government of the United States; that on or about the twenty-first day of February, 1920, as such receiver he became the owner of certain real property within Yellowstone county, Montana, which property is described in the complaint; that on the twenty-ninth day of August, 1921, the board of county commissioners of said county adopted a resolution wherein a special assessment was levied against all of the aforesaid property for the purpose of defraying the expenses of improvements constructed in rural improvement district, designated No. 10, of said county of Yellowstone; that at no time between the fifth day of March, 1921, and the twenty-ninth day of August, 1921, had any act been performed to create said special improvement district No. 10; that the amount levied against said property was the proportion of the whole cost as the area of the said property bore to the entire area of the district and was divided into a series of payments payable each year; that the levy for the year 1921 amounted to the sum of $1,128.87, which sum was paid under protest to prevent the treasurer of said county from imposing the statutory penalty for delinquent taxes and from selling said property to satisfy the same.

The complaint does not disclose when the various steps were taken required by the statute for the creation of the special improvement district in question. There is no suggestion that

the district was not regularly created. Since it is alleged that no act was done between March 5, 1921, and August 29, 1921, we may assume that all of the acts necessary to create the district and make the improvement for which the assessment was made were performed prior to March 5, 1921. It is presumed that official duty has been regularly performed. (Sec. 10606, Rev. Codes 1921.) We may also infer that the district was organized under Chapter 156 of the Acts of the Fifteenth Legislative Assembly, as amended by Chapter 67 of the Sixteenth Legislative Assembly, since those Acts were in force and effect prior to March 5, 1921, but were repealed on that date and a similar law enacted in their stead. (Laws 1921, Chap. 147.)

Two questions are raised by the appeal for our consideration: May real property within a special improvement district, belonging to a national banking association, be impressed with a lien for the cost of improvements in such district, to the same extent as other property within such district? May the board of county commissioners make a special improvement district levy for the cost of improvements, after the Act has been repealed under which the district was created and the improvements made, there being no saving clause in the Act repealing? We will consider these questions as fully as we can under the facts directly alleged or which may be reasonably inferred from the complaint.

It is contended on behalf of the plaintiff that the first question must be answered in the negative. This question appears to be one of first impression. No contention is made that the situation is altered by reason of the fact that the bank to which the property belongs is in the hands of a receiver. The plaintiff cites *Rosenblatt* v. *Johnston,* 104 U. S. 462, 26 L. Ed. 832 [see, also, Rose's U. S. Notes]. This case holds that property and assets in the hands of the receiver of a national bank in legal contemplation still belong to the bank. ''The bank did not cease to exist on the appointment of the receiver.''

Section 12 of the Act under which the district was created is as follows: "Whenever any lot, piece or parcel of land belonging to the United States or mandatory of the government, shall front upon the proposed work or improvement, or to be included within the district declared by the board of county commissioners in its resolution of intention to be a district to be assessed to pay the cost and expenses thereof, the said board of county commissioners shall in the resolution of intention declare that said lots, pieces or parcels of land or any of them, shall be omitted from the assessment thereto to be made to cover the cost and expenses of said work or improvement and the cost of said work or improvement in front of said lots, pieces or parcels of land shall be paid by the county from its general fund."

It is contended that a national banking association is a mandatory of the government and therefore exempt from [1] assessment for the cost of the improvement. The exemption must exist at the time of the adoption of the resolution of intention to create the district. A mandatory of the government which may perchance acquire property within an improvement district after the resolution of intention cannot claim the exemption provided for in the statute. The property of a government instrumentality, such as a postoffice or government agricultural experiment station, may be exempt from assessment, as was held to be the case in *Ford* v. *Drake,* 46 Mont. 314, 127 Pac. 1019. It is not necessary in this case for us to say when the government must acquire its property, with reference to the time of creating the district, in order to be entitled to the exemption, recognized in that case. But, unless the conditions of the statute are complied with, the exemption, if any, must be based upon other grounds. If the statute creates any exemption from assessment, it can only be by virtue of full compliance with all of its conditions. Since the plaintiff does not allege that the property in question was excluded from liability for the levy in the resolution of intention, or that he acquired the property prior to the

time it was passed by the board, and should therefore have been exempted therein, he has not stated sufficient facts to entitle him to the exemption, even though it be granted that a national bank was intended to be included as a mandatory of the government.

It has been held by this court that the owner of property **[2]** within a special improvement district cannot sit by and see improvements made benefiting his property and increasing its value, and then, after such improvements are made, refuse to pay for the same. (*Power* v. *City of Helena,* 43 Mont. 336, 36 L. R. A. (n. s.) 39, 116 Pac. 415.) The complaint, as we stated before, does not disclose when the improvements were made. If he acquired his property prior to the making of the improvements, he is liable for the cost for the reasons stated in the *Power Case.* If he acquired his property after the improvements were made, he could not free it from liability to bear its proper part of the cost, even though he be a mandatory of the government. This is true, in spite of the provision in the law that a specific lien does not attach to the land until after the assessment is made. The liability for the lien is there as soon as the improvement is made. (*Dougherty* v. *Miller,* 36 Cal. 83.)

In construing a statute the courts must look to the language **[3]** employed and the object which is sought to be obtained by the law. (*Johnson* v. *Butte & Superior Cop. Co.,* 41 Mont. 158, 48 L. R. A. (n. s.) 938, 108 Pac. 1057; *State ex rel. Mc-Gowan* v. *Sedgwick,* 46 Mont. 187, 127 Pac. 94.) The term "mandatory of the government" is a new one in legal phraseology. So far as we are aware it has not been judicially defined. "Mandatory" (usually spelled mandatary) is defined as follows: "One to whom a mandate is given." (Webster's New Int. Dict.) "One to whom a command or charge is given; one who has received and holds a mandate to act for another; an attorney." (Century Dict.) "One who undertakes, without compensation, to do service for another with regard to property placed in his hands by the other." (Funk

& Wagnall's Stand. Dict.) In 2 Kent's Commentaries, 569, the word is used with the latter meaning: "One to whom a charge or command is given; a person who has gratuitously undertaken to perform certain duties." (26 Cyc. 514.)

It cannot be said that a national banking association holds [4] a mandate from the government. We are aware that the supreme court of the United States has said that national banks are designed to be used to aid the government in the administration of an important branch of the public service. (*Farmers' Nat. Bank* v. *Dearing,* 91 U. S. 29, 23 L. Ed. 196 [see, also, Rose's U. S. Notes].) But it cannot be said that in any real sense they act under the charge or command of the government, or act for the government. They do not have in their hands any government property.

Based solely upon the ordinary meaning of the language employed, our opinion is that the exemption provided for in the section quoted was intended to apply to federal agricultural experiment stations, military reservations, postoffices, *etc.* These render a service to the local community which is gratuitous, so far as the local authorities are concerned. Thus when the county bears the cost of the improvement that would otherwise fall upon the property of the government, the local people receive something in return for the exemption. The same reasons underlie the exemption from general taxation conferred upon educational, religious and charitable institutions.

No reason is suggested why the legislative body of this state should desire to make an exemption in favor of national banks. There is no similar exemption in favor of state banks or other corporations. Even public schools are liable for special improvement assessments, although not subject to general taxation. (*City of Kalispell* v. *School Dist. No. 5,* 45 Mont. 221, Ann. Cas. 1913D, 1101, 122 Pac. 742.) One of the reasons assigned in that case for holding the property of the school district liable for the assessment was that the improvement, for which the assessment was made, had presumptively added

at least an equal amount to the value of the property. That is the theory underlying all special improvement district legislation. A pertinent question was asked by Mr. Justice Brewer in *Illinois Cent. R. R.* v. *Decatur,* 147 U. S. 190, 37 L. Ed. 132, 13 Sup. Ct. Rep. 293 [see, also, Rose's U. S. Notes] : "As special assessments proceed upon the theory that the property charged therewith is enhanced in value by the improvement, the enhancement of value being the consideration for the charge, upon what principles of justice can one tract within the area of the property enhanced in value be released from sharing in the expense of such improvement?" We add another question: Why should the property of a national bank be enhanced in value by an improvement, and the cost of this improvement paid out of the general fund of the county? We are convinced that the legislature never intended to bestow any such gratuity upon a corporation whose capital stock is owned exclusively by private persons, and which corporation is organized primarily for their private gain.

There is one further reason which convinces us that a national banking association could not have been contemplated as a mandatory of the government and entitled to the exemption provided for in the section quoted. The power of such an association to hold real estate is very limited. Aside from the property necessary for its immediate accommodation in the transaction of its business, it can only acquire real estate in satisfaction of debts previously contracted in the course of its dealings. With the exception of its business property, it can hold real estate so acquired for a period not exceeding five years. These restrictions are provided by the national Banking Act. (Sec. 5137, Fed. Stats. Ann. [U. S. Comp. Stats., sec. 9674].)

By the provision of the Act under which the special improvement district was organized, the assessments may be spread over a period of ten years. It is inconceivable that there was any intention to exempt certain property for a part of the time for which the assessments are made. Would the

county assume the burden for the entire ten years' period, or only for the time that the bank could lawfully own the property? If the bank should sell the property before the expiration of the time it might lawfully. own the property, would the purchaser become liable immediately for the assessments, or would he acquire the property free from all liability to pay assessments? It will not be necessary for us to answer these questions for the reason that we are convinced no exemption was intended. As was said by Mr. Justice Holloway in *City of Kalispell* v. *School Dist. No. 5, supra:* "The burden [5] is upon the party claiming an exemption to show an exception in his favor written in the law in express terms, or clearly implied from the language employed." The plaintiff has not shown any such exception in this case. If his property is not subject to the assessment, it is because the state has no power to make it so. There is no exception in its favor contained in the state law.

It is next contended that an assessment of the property of [6] a national bank is prohibited by the federal law. It is argued that the silence of Congress upon the matter constitutes a prohibition. The above quotation from the opinion of Mr. Justice Holloway, which is supported by the decisions of various courts, among them *New Orleans* v. *Warner*, 175 U. S. 120, 44 L. Ed. 96, 20 Sup. Ct. Rep. 44 [see, also, Rose's U. S. Notes], answers this argument. Liability for special assessment is the rule. An exemption in favor of any property must be clearly expressed or implied from the language used.

The *dictum* of the circuit judge in *First National Bank of Richmond* v. *City of Richmond* (C. C.), 39 Fed. 309, which is cited in the brief of counsel for plaintiff, had reference to general taxes. It is not authority for the argument of counsel with reference to special assessments.

Section 5219, Fed. Stats. Ann., provides that "Nothing herein shall be construed to exempt the real property of associations from either state, county, or municipal taxes, to the same extent, according to its value, as other real property

is taxed." (U. S. Comp. Stats., sec. 9784.) It is argued that the assessment in this case being computed upon an area basis is invalid, because not based upon value. This argument must be based upon the premise that special assessments are taxes. This court, in *City of Kalispell* v. *School Dist. No. 5, supra,* has held that they are not taxes. The same conclusion was reached by the supreme court of the United States in *Illinois Cent. R. R. Co.* v. *Decatur, supra.* In that case it was held that the railroad company was liable for special assessments for street improvements, although its charter gave it exemption from general taxes for state, county and municipal purposes. The same distinction is recognized in *New Orleans* v. *Warner, supra.* These decisions are all based upon the proposition that the property is enhanced in value equal to or more than the amount of the assessment. The holder of the property is therefore made no poorer by reason of the assessment.

In the case of *Mercantile National Bank* v. *New York,* 121 U. S. 138, 30 L. Ed. 895, 7 Sup. Ct. Rep. 826 [see, also, Rose's U. S. Notes], it is said: "The main purpose, therefore, of Congress, in fixing the limits to state taxation on investments in the shares of national banks, was to render it impossible for the state, in levying such a tax, to create or foster an unequal and unfriendly competition, by favoring institutions or individuals carrying on a similar business and operations and investments of a like character. The language of the Act of Congress is to be read in the light of this policy." Many other decisions of the supreme court of the United States are cited to the same effect in the opinion of Mr. Chief Justice Callaway in the recent case of *First Nat. Bank of Glendive* v. *Dawson County,* 66 Mont. 321, 213 Pac. 1097.

It certainly was not the intention of Congress to make the property of national banks exempt from assessment for special improvements. To do so would prevent the public improvement of roads and streets upon which abut the property of national banks, unless the county or city pay that part of the cost which should properly be borne by the property of the

bank. This would enhance the value of its property at the expense of the tax-paying public. An intention to create such an unjust discrimination in favor of national banks can neither be found in the language employed by Congress nor the policy of the law as seen by the supreme court of the United States.

We will now consider the second question raised by the [7] appeal. Again we are obliged to rely upon inference by reason of the paucity of facts pleaded in the complaint. Since it is alleged that nothing was done since March 5, 1921, we may infer that everything was done to incur the cost of the improvement before the levy of the assessment to pay this cost was made. It is of no importance that the levy was made under the Act of March 5, 1921, although the district was created and the work done under an Act repealed at that time. The manner of levying the assessment is the same under each Act. It was not necessary for the board of county commissioners to refer to the Act which gave them authority. All that is required is that they be empowered by some law to levy the assessment and that they proceed in the prescribed manner in exercising the authority conferred. (Page & Jones on Taxation by Assessment, sec. 775; *Jones* v. *Aldermen of Boston,* 104 Mass. 461.)

The board of county commissioners did not lose their authority to levy the assessment by the repeal of the Act under which the district was organized, and the improvements were made even though there was no saving clause. To hold otherwise would necessitate the adoption of one or the other of two impossible alternatives. Either the party who did the work and held the district warrants would not be paid, or he would have to be paid out of the funds of the county, city or other political subdivision. The first alternative would impair the obligations of a contract, and would be void under the provisions of section 10 of Article I of the Constitution of the United States and of section 11 of Article III of the Constitution of the state of Montana. The second alternative would throw the cost of an improvement which enhances the value

of private property upon a political subdivision of the state. This would be a mere gratuity and would be repugnant to section 1 of Article XIII of our state Constitution.

We recommend that the judgment be affirmed.

PER CURIAM: For the reasons given in the foregoing opinion, the judgment appealed from is affirmed.

*Affirmed.*