ROAD IMPROVEMENT DIST. NO. 7 OF POINSETT COUNTY, ARK., v. GUARDIAN SAVINGS & TRUST CO.

(Circuit Court of Appeals, Eighth Circuit. October 12, 1925. Rehearing Denied December 10, 1925.)

No. 6422.

1. Highways ⊂⇨90—In suit by bondholders, contention that assessment was void, because including property theretofore condemned, overruled.

In view of Acts Ark. 1920, No. 45, confirming and establishing the assessment of benefits made by road improvement district created by 2 Road Laws Ark. 1919, p. 1413, and in view of power of district commissioners, under section 8, to make reassessment, contention of property owners, intervening in suit to enforce bonds, that acreage included in assessment had been condemned for other purposes before the assessment was filed should be established by strong and clear evidence.

2. Estoppel ⊂⇨22(3)—Road district and property owners estopped by recitals in bonds from asserting, as against innocent bondholders, defects in act creating district and invalidity of assessment.

Where bonds of road improvement district, created by 2 Road Laws Ark. 1919, p. 1413, recited legal existence of district and due compliance with law in making assessment, the district and property owners were conclusively estopped, as against innocent purchasers for value, from asserting any defects of description in the act which created the district, or defects in the assessment of benefits.

3. Courts ⊂⇨493(3)—Judgment ⊂⇨585(3)—State court's jurisdiction of suit to enjoin highway assessment held not to preclude jurisdiction of federal court of suit on bond; judgment setting aside assessment not res judicata of bondholders' suit.

Suit in state court by property owners to set aside assessment of benefits by road improvement district, created by 2 Road Laws Ark. 1919, p. 1413, in which neither purchasers of bonds nor their trustee was made party, held not to involve the same matter or controversy as subsequent suit by purchasers to enforce bonds, so as to deprive the federal courts of jurisdiction, nor was the judgment in the state court res judicata of the latter action.

**4. Judgment ☞708—Findings in prior action to enjoin highway assessment held not evidence against persons not parties thereto.**

Finding by state court, in an action by owners of property to enjoin a highway district assessment, that the district made a radical change of plans, which avoided the assessment and the taxes levied, is not competent evidence in a subsequent suit by bondholders to enforce the bonds; they not being parties to the prior action.

**5. Highways ☞90—Payment by bondholders of money to agent selling bonds for district held not to require reduction of judgment against district by that amount.**

Where road district created by 2 Road Laws Ark. 1919, p. 1413, deposited bonds with trustee for bondholders, and delivered its written order for the bonds to one J., who took such order, sold the bonds at par value, cash, took buyer's check for a named sum, payable to trustee, who turned such check over to J., and bondholders credited to district balance of purchase price and paid out other amounts on orders of district, recovery on bonds should not be reduced by the amount of money so paid to J.

Appeal from the District Court of the United States for the Eastern District of Arkansas.

Suit by the Guardian Savings & Trust Company against Road Improvement District No. 7 of Poinsett County, Ark., in which by leave of court the Weona Land Company and others answered. Decree for complainant, and defendants appeal. Affirmed.

Henry D. Ashley, of Kansas City, Mo. (J. F. Gautney, of Jonesboro, Ark., on the brief), for appellant.

George B. Rose, of Little Rock, Ark. (D. H. Cantrell, J. F. Loughborough, and A. W. Dobyns, all of Little Rock, Ark., on the brief), for appellee.

Before SANBORN and KENYON, Circuit Judges, and SCOTT, District Judge.

SANBORN, Circuit Judge. The defendant below, road improvement district No. 7 of Poinsett county, Ark., a quasi municipal corporation of that state, created on March 21, 1919, by Act No. 322 of the Acts of its General Assembly of that year (Road Acts Ark. 1919, p. 1413), which act was amended, and the assessment of benefits made by that district and filed with the county clerk of that county on December 15, 1919, was declared just and equitable, confirmed, and established on February 4, 1920, by Act No. 45 of the Acts of the Arkansas Assembly for that year, issued its bonds for $230,000, and secured them by its pledge and mortgage to the plaintiff below, the Guardian Savings & Trust Company of Cleveland, Ohio, as trustee for the bondholders, of all the assessments made and taxes levied, or that might be made and levied, and of all the liens created and that might be created by the district on account of the proposed road upon the real property, railroads, and tramways in its district, and of all the proceeds of and revenues therefrom. After these bonds had been issued and delivered to the plaintiff as trustee, and after the pledge and mortgage had been recorded, the defendant district sold the bonds on June 15, 1920, to Otis & Co., copartners, of Cleveland, Ohio, for their par value, and these purchasers, without notice of any defenses to the bonds, pledge, or mortgage, or of any defects in the proceedings of the district or its officers in the making of the assessment of benefits or the taxes or liens mortgaged, paid for the bonds on the orders of the district, including interest on their payments, about $125,000 more than they received for interest or otherwise on account of the bonds, before they learned that there was any claim by the district, or by the owners of the property assessed, or by any one, of any defect or invalidity in the proceedings for the assessment, or the taxes, or liens, or the bonds, the pledge, or the mortgage.

After the bonds had been sold to Otis & Co. the Weona Land Company and others, who were owners of property assessed by the defendant district for this improvement, brought a suit against the district, its commissioners, and others in the chancery court of Poinsett county, Ark., to which neither the Guardian Savings & Trust Company, nor Otis & Co., nor any of their members, or holders of the bonds, was a party, and such proceedings were had in that case that a decree was entered therein in July, 1922, to the effect that the assessment securing the bonds was set aside, and the defendants in that case were enjoined from contracting further work on the improvement in the district, and from paying out any moneys of the district, and the coupons attached to the bonds which fell due on March 1, 1922, have not been paid.

This suit was subsequently brought in the federal court by the complainant, the trustee for the bondholders, to enforce the bonds, pledge, mortgage, assessment of benefits, the taxes levied thereon, and the liens created thereby, to collect and pay the amounts due to the purchasers of these bonds. In its bill the trustee set forth its claims and alleged facts on which it based them. The defendant district did not answer, but by leave of court

the defendants, the Weona Land Company and other owners of property assessed by the district, answered the bill, and under these pleadings the parties presented their evidence and arguments at the final hearing, and the court below subsequently rendered its decree to the effect that the bonds of the district specified therein were its valid obligations, that they were secured by the pledge and mortgage of the district, dated May 18, 1920, filed in the office of the recorder of Poinsett county on May 22, 1920, that this mortgage was the first lien upon the assessment of benefits and taxes made by the district and its officers, that that assessment should stand as the assessment of benefits of the district until a new assessment satisfactory to the court should be made, that the defendant district was indebted to Otis & Co., purchasers of the bonds, to the amount of about $125,000, that this debt was secured by the mortgage and its lien upon the assessment and taxes levied thereon, and that the receiver of the court below, who had been appointed earlier in the suit, should proceed to enforce the assessment made and collect the requisite taxes to pay therefrom the amount owing to Otis & Co. and the costs of the suit. The appeal of the defendant district below challenges this decree.

Counsel for the appellant first contend that the court below fell into fatal errors, because it did not hold the bonds and mortgage void in the hands of their purchasers, on account of alleged delinquencies and mistakes of the General Assembly of Arkansas and of the officers of the district, and on account of defects in the proceedings for the creation of the district, the making of the assessment, the levy of the taxes, and the making of the liens on which the bonds and pledge or mortgage are founded. They take the positions that the bonds and mortgage should have been held to be void by the court below:

(1) Because Act No. 322 of 1919, which created the district, did not more definitely describe its boundaries than to declare that it consists "of all quarter sections of land, any part of which is within three miles of said road at any point north and west of St. Francis river (or right bank), and shall include all towns within the territory," although that description on its face and by decisions of the Supreme Court of Arkansas was clearly sufficient. Van Dyke v. Mack, 139 Ark. 524, 528, 529, 214 S. W. 23; Rayder v. McGehee East & West Highway District, 161 Ark. 269, 256 S. W. 35, 36.

(2) Because the assessment of benefits

on which the security of the bonds rests, filed in the county clerk's office December 15, 1919, which was approved and confirmed by Act No. 45 of the General Assembly of Arkansas on February 4, 1920, embraced 3,000 acres of land, on which the assessed benefits were $70,000, out of 26,880 acres, on which the total assessed benefits were $450,000, and they claim that the assessment on this 3,000 acres was void because, before it was filed, and before it attached to the property by its filing on December 15, 1919, and its confirmation by the Assembly on February 4, 1920, these 3,000 acres had been condemned, taken, and appropriated by the county court of Poinsett county for a floodway, which extended diagonally from northeast to southwest across the proposed road district and road.

[1] Counsel for the plaintiff, however, strenuously deny that this condemnation and appropriation of the 3,000 acres was made before the assessment for the road and its lien were made, confirmed by the General Assembly, and attached, and a careful reading of all the evidence in the record in this case upon this subject has failed to convince that it sustains the claim of such condemnation. Upon this issue the evidence should be strong and clear to warrant contrary conclusion in view of the fact that the General Assembly of Arkansas on February 4, 1920, approved and confirmed this assessment, which then included the 3,000 acres, and declared it to be just and equitable (Milheim v. Moffat Tunnel Improvement District, 262 U. S. 710, 717, 721, 43 S. Ct. 694, 67 L. Ed. 1194), and the court below upon the consideration of all the evidence sustained it. And, even if such a condemnation had been made prior to February 4, 1920, the commissioners of the district had plenary power not oftener than once a year to reassess the benefits in the district on condition that the total amount of assessed benefits should not be diminished if the district had incurred any indebtedness (Act No. 322 of 1919, § 8), and if such an error had been made the district and its commissioners were in fault if they did not so reassess.

(3) Because the cost of the contemplated improvement will exceed the amount of the assessment of benefits.

(4) Because the assessment of benefits was unjust and unequal, in that lands equidistant from the roadway on the near side and on the far side of the St. Francis river were unjustly and unequally assessed by the use of the zoning system at the same rate.

And (5) because of other objections of like character and of like objections to the taxes levied upon the property assessed.

[2] To all these objections to the assessment, the taxes levied, the liens claimed thereunder, the bonds, the mortgage, and the decree there is a single conclusive answer. It is that this district, its officers, and the owners of the property assessed and taxed within it are conclusively estopped, as against the innocent purchasers for value of these mortgage bonds, from asserting or taking any advantage thereof. This road district was lawfully created by the General Assembly of the state. It was granted plenary power to make a lawful assessment of the benefits to the real property, railroads, and tramways within its boundaries to accrue from the construction of the proposed road, to levy the necessary taxes thereon to pay for the proposed improvement, to borrow money to make it, to issue its negotiable bonds therefor, and to "pledge and mortgage all assessments for the repayment thereof." Section 17, Act No. 322, of the Acts of Arkansas of 1919; Road Improvement District No. 4 v. Southern Trust Co., 152 Ark. 422, 239 S. W. 8; Logan v. Sidewalk District No. 6, 163 Ark. 591, 260 S. W. 407, 408. This legislation placed this quasi municipal corporation in the same relation to the owners of the property within its district assessed and taxed by it, and to its mortgage bondholders, that a municipal corporation bears to its mortgage bondholders and the owners of property within its boundaries, and gave it ample authority to put into its bonds and mortgage the certificate of the due performance of all acts requisite to the legality and validity of the bonds and mortgage customarily inserted in such securities to promote their sale. This district exercised that authority, and printed into its bonds and mortgage, to induce strangers to purchase them, this certificate:

"The road improvement district hereby covenants that said district is duly and legally existing as a road improvement district, under the Constitution and laws of the state of Arkansas; that the real property, railroads, and tramroads within said district have been duly assessed for the making of said improvement; that all acts, conditions, and things required to be done precedent to and in the issuing of this bond, including the organization of said district, the adjudication of the benefits against the real property, railroads, and tramroads therein, and the levying of the road assessment tax, have been done, have happened, and have been performed in regular and due form, as required by law. * * * "

Under the Constitution of the United States and the Constitution and statutes of Arkansas, this road district and its officers had plenary authority to have obviated every one of the objections now under consideration, to have made the assessment, the levy of taxes, and all proceedings legal and valid, and to have made its certificate in its bonds and mortgage true. It obtained the money of Otis & Co. on this certificate that it had done so, and neither it nor the owners of the property in its district assessed, which it represented in its sale of these bonds, can now be permitted to defeat this suit of the purchasers to collect them by such defects in their proceedings as are now under consideration, on the ground that they made them illegal or invalid and their certificate false. Knox County v. Aspinwall, 21 How. 539, 544, 16 L. Ed. 208; Knox County v. Wallace, 21 How. 549, 16 L. Ed. 211; Town of Aurora v. Gates, 208 F. 101, 104, 105, 108, 109, 125 C. C. A. 329, L. R. A. 1915A, 910; Id., 232 U. S. 722, 34 S. Ct. 330, 58 L. Ed. 814; National Life Ins. Co. v. Board of Education, 62 F. 778, 792, 10 C. C. A. 637; Hughes County v. Livingston, 104 F. 306, 316, 43 C. C. A. 541; Weniger v. Success Mining Co., 227 F. 548, 553, 142 C. C. A. 180; Shelton v. Gas Securities Co., 239 F. 653, 657, 152 C. C. A. 487.

Other arguments of the assailants of this decree are that the United States District Court was without jurisdiction to render it: [3] (a) Because the suit of the Weona Land Company and others against the district and its officers, in which that court in July, 1922, adjudged the assessment of benefits void and enjoined defendants therein from collecting the taxes based thereon, was commenced before this suit was brought, and the state court thereby "first acquired jurisdiction of the same matter involved in this suit, and both this suit and said suit in equity, Weona Land Company v. Road Improvement District No. 7 of Poinsett County, Arkansas, involve the very matters in controversy in this case," and, the suit in the state court having been first brought, the court below had no jurisdiction of this case under Kline v. Burke Construction Co., 260 U. S. 226, 43 S. Ct. 79, 67 L. Ed. 226, 24 A. L. R. 1077. But the facts on which this position is based never existed, and do not now exist, and it is consequently untenable. The state court never first, or at any time, acquired jurisdiction of the "same matter involved in this

suit," nor were "the very matters in controversy" in this case involved in that suit. The matters in controversy in that suit were the claims and rights of the district and its officers to enforce the assessment they had made and the taxes they had levied on the property in the district against the owners of that property. The matters in controversy in this suit are the claims and rights of the purchasers for value before maturity, without notice of any defects or defenses thereto, of the negotiable mortgage bonds of the district, certified to have been lawfully made and secured on the property therein, and the state court in its decree expressly found and adjudged "that bonds have been issued, and neither the bondholders nor the trustee are parties to this cause, nor have they appeared in any way, and therefore any and all rights claimed by said bondholders or the trustee cannot be affected by this decree, and all rights in their behalf remain undisturbed, and this decree is not intended to bar or affect such claims; the same not being adjudicated herein."

(b) Because the decree in the state court rendered the rights of the bondholders to the relief they sought in this case res adjudicata, a position too vulnerable to warrant comment and already adjudicated against them by the Supreme Court in this case. Guardian Savings & Trust Co. v. Road Improvement District No. 7 of Poinsett County, 267 U. S. 1, 45 S. Ct. 201, 69 L. Ed. 487, opinion filed January 19, 1925.

(c) Because the bonds were dated April 1, 1919, the assessment was not filed in the county court until December 15, 1919, and was not confirmed by the General Assembly until February 4, 1920. But, though dated April 1, 1919, the bonds were not sold to Otis & Co. until June 15, 1920, when the coupons due by their terms prior to that date were cut from the bonds and retained by the defendant district, so that when the sale was made, when Otis & Co. commenced paying the consideration for the bonds, and when the estoppel of the recitals in the bonds first took effect, the assessment had long been made and confirmed. There is no equity in this contention, no evidence that Otis & Co. had any notice or knowledge of the fact that the assessment had not been made or confirmed at the time the bonds were dated, and there is positive and convincing proof that they bought the bonds at par on June 15, 1920, and commenced to pay for them on that day, without notice of any defenses to them, or of any defects in the proceedings on which they were based, in reliance upon the certificate in the bonds and the legal presumption of their validity.

[4] (d) Because the state court found that in November, 1921, or later, the district made a radical change of the plans of the road which avoided the assessment and the taxes levied thereon. But the finding or opinion of that court was not and is not competent evidence against the bondholders in this suit of that fact, if it is a fact. We discover no competent evidence of it in the record in this case, and, if such a fact existed, it would constitute no defense for the property holders here against the rights of the bondholders which attached to the property assessed when Otis & Co. bought the bonds in June, 1920.

[5] Finally, counsel insist that, even if the bondholders are entitled to any relief, the amount of their recovery is too large by the sum of $17,250 and interest thereon. The evidence upon this subject is not entirely satisfactory, but these facts are well established. At some time prior to May 19, 1920, the defendant district had deposited the bonds with the plaintiff, the trustee for the bondholders; it delivered to James Gould its written order to the plaintiff, dated on that day, to deliver the bonds to Mr. Gould; Gould took this order and the opinion of counsel that the bonds were valid to Otis & Co., sold the bonds to them at their par value, cash, took their check for $17,250, payable to the order of the trustee, which the latter immediately turned over to Gould, and Otis & Co. credited to the district on their books the balance of the purchase price, and paid out the other amounts which the district owed them upon its later orders. Two of the commissioners of the district testified that they sold the bonds to Otis & Co., through James Gould, for 98 cents on the dollar, that the bonds were handled for them by Judge Gould, and that the district paid no commission to any one. Mr. Rockwood, called by the complainant, testified that Mr. Gould came to Otis & Co. on June 15, 1920, and sold the bonds to them at par for cash. The written order of the district on the trustee, which it delivered to Mr. Gould to deliver the bonds to him, justified Otis & Co. in purchasing them from him, and paying to him or to his order the purchase price for them, and there was no error in charging the $17,250 and interest thereon to the district in the decree.

This is a suit in equity; the claims of Otis & Co., the purchasers of these bonds, appeal strongly to the conscience of a chancellor; against those claims there is little, if any, equity in the objections of the defend-

ants; and no substantial error was committed in the rendition of this decree. Let it be affirmed.