**LUMBERMEN'S TRUST CO. v. TOWN OF RYEGATE.\***

No. 6564.

Circuit Court of Appeals, Ninth Circuit.

Aug. 15, 1932.

\*Rehearing denied November 14, 1932.

Mont., the appellee, for the construction of a waterworks system in said town, and agreed to accept, and did accept, in part payment therefor, bonds of special improvement district No. 4 of the town of Ryegate, Mont., of the par value of $45,602.42. These bonds were purchased by the appellant. The bonds not having been paid when **due,** appellant brought this action alleging such nonpayment and refusal on the part of the appellant to pay the same, and prayed judgment for the par value of the bonds with interest at 6 per cent. as therein provided. The appellee states that the action is one for money had and received, and there are allegations in the complaint tending to substantiate this view. The trial court defined the action as one in assumpsit "on an implied contract for the balance due on the construction of a water supply system." There are allegations in the complaint which tend to substantiate this view. The appellant, on the other hand, claims that it is entitled to judgment upon any one of several theories. It also contends that on this appeal the action should be dealt with as one in equity, and that upon the facts the judgment in favor of the city should be reversed and a judgment ordered for the whole or part of the amount for which suit was brought in accordance with such theory of the law and the facts as may be adopted by this court. Montana has adopted the system of code pleading abolishing common-law forms of action, Rev. Codes Mont. 1921, § 9126; Daniels v. Andes Ins. Co., 2 Mont. 79; and a plaintiff is entitled to such relief as the law affords upon the facts stated in his complaint, Rev. Codes, Mont. 1921, §§ 9125, 9126, 9129; Daniels v. Andes Ins. Co., supra; Higgins v. Germaine, 1 Mont. 230; Pomeroy's Code Remedies (5th Ed.) §§ 327, 347.

The case was tried by the court without a jury in accordance with written stipulation. The issues were framed by the complaint, answer, and reply. Many of the allegations in the pleadings were admitted. The parties entered into and filed at the trial a stipulation of the facts but expressly reserved the right to introduce evidence on all issues not covered by the stipulation and did in fact offer evidence set forth in the bill of exceptions comprising about 100 pages of the transcript. As the power of this court on appeal to review the facts depends upon whether or not the appeal is from a judgment at law or a decree in equity, we cannot at this juncture state the facts as admitted and agreed and as disclosed by the evidence without confusing the questions properly before us for determination upon the record.

Samuel V. Stewart, John G. Brown, and Stewart & Brown, all of Helena, Mont., and Geo. B. Guthrie and Wilson & Reilly, all of Portland, Or., for appellant.

W. M. Johnston, H. J. Coleman, W. J. Jameson, Jr., and Johnston, Coleman & Jameson, all of Billings, Mont., for appellee.

Before WILBUR and SAWTELLE, Circuit Judges, and ST. SURE, District Judge.

WILBUR, Circuit Judge.

The Security Bridge Company entered into a contract with the town of Ryegate,

16

At the outset we may state that the action is clearly one at law and that our powers on appeal are those powers of review applicable to an action at law. In an action at law where the parties waive a jury the power of this court to review or consider the facts on appeal is extremely limited. Where there is an agreed set of facts, the power is more ample. We therefore approach the questions involved on this appeal from the standpoint of the complaint and the issues framed thereon, and in so doing will state them as briefly as possible.

The complaint alleges that December 30, 1919, the town counsel of the appellee passed a resolution of intention to create special improvement district No. 4; that notice thereof was published; that on February 11, 1920, a resolution was passed creating the district and ordering work described in the resolution of intention to be done; that the purpose of these resolutions was to install in the town a complete system of waterworks; that the Security Bridge Company bid for the construction of the waterworks system and entered into a written contract to perform said work; that it was intended and contemplated by the appellee that it should issue negotiable evidence of the debt in the form of special improvement district bonds to pay for the construction of said waterworks system; that thereafter bonds in the form provided by law (Rev. Codes Mont. 1921, § 5249) were issued and acquired by the plaintiff; and that defendant paid the interest maturing January 1, 1922, but refused to pay any further interest and declared its intention of never paying the principal sum and repudiated said debt. These allegations, it will be observed, are consistent with the theory now advanced by the appellant that the action is a suit upon the bond for the reason that in a federal court the appropriate method of enforcing the obligation of the bond in the absence of power to entertain an original proceeding in mandamus to compel the officers to perform their duty to levy taxes is a suit against the municipality for a judgment to be thereafter followed by appropriate process to compel the assessment and levy of taxes upon the property within the municipality liable for the tax. County of Cass v. Johnston, 95 U. S. 360, 24 L. Ed. 416, citing with approval Jordan v. Cass County, 3 Dill. 185, Fed. Cas. No. 7517; Davenport v. County of Dodge, 105 U. S. 237, 26 L. Ed. 1018; Mather v. City and County of San Francisco (C. C. A.) 115 F. 37. There is no specific allegation in the complaint that the bonds are either valid or invalid, and in view of the fact that such an allegation would be an allegation of a conclusion of law none was needed. The other allegations of the complaint, however, tend to confirm the view of the appellee that the action was intended to be an action for money had and received. In order to show privity between the appellant and the appellee it is alleged that the scheme was a municipal project to secure a complete water system for the town; that the Security Bridge Company, the contractor, was unable to finance the project without the sale of its bonds to pay for labor and material; that this was known to the town; that negotiations for the sale of bonds by the Security Bridge Company to the appellant were carried on with the knowledge of the town; that the officers of the town importuned the Security Bridge Company to accept said special improvement district bonds; that appellant as holder of the bonds "became possessed of all the rights, privileges and claims which the Security Bridge Company might have or hold or be entitled to under and by virtue of its contract with the defendant town and its faithful performance of the contract." Bonds were issued from time to time during the progress of the work for the portion of the work completed and accepted, and that the appellant by purchasing said bonds "did thus furnish all of the money that was used to build and furnish to the defendant town and its inhabitants the waterworks plant" in question. It is also alleged that the waterworks system was constructed, received, accepted, and has been and is now being used by the defendant town and its inhabitants and that they are receiving the income and benefits thus derived from "moneys of this plaintiff had and received and used by said defendant town and its officers for such public purposes, all of which moneys so had and used being evidenced by said bonds hereinbefore referred to."

Assuming for the moment, without deciding, that the appellant stands in the shoes of the contractor, its allegations in support of the claim for money had and received must be predicated upon the theory that the bonds are invalid and that therefore the money paid by the appellant to the town through the contractor was without consideration. The allegations, whereby appellant seeks to stand in the shoes of the contractor and to recover from the town for work and labor done by the contractor under his contract, must also be predicated upon the theory that the bonds paid to the contractor and

received by him in full satisfaction for the work done, are invalid, and that therefore the town is liable for the value of the unpaid work and labor performed by the contractor. Appellant, however, vigorously contends on this appeal that the bonds are valid, and if not valid obligations for the entire amount they are at least valid obligations· for the amount paid by the appellant to the contractor therefor, to wit, $38,762.04, and if not for this full amount for a lesser amount hereinafter more specifically considered. The appellee contends that the position of the appellant is a complete reversal of its attitude and theory in the court below and that the case cannot properly be considered upon appeal on a new theory. These contentions we will consider hereafter.

The first obstacle raised to a consideration of the facts by this court is based upon the proposition that although most of the facts were stipulated by the parties there was no motion by appellant for a judgment and no request for a ruling upon a principle of law, and consequently that the facts cannot be reviewed on this appeal. This position is well taken, were it not for the fact that an agreed set of facts somewhat changes the power and duty of the appellate court. That power and duty has been lately reviewed and stated in an opinion by District Judge Pollock speaking for the Circuit Court of Appeals of the Tenth Circuit, Kansas City Life Ins. Co. v. Shirk, 50 F.(2d) 1046, in which the authorities are collated and reviewed. See, also, Fleischmann Const. Co. v. U. S., 270 U. S. 349, 46 S. Ct. 284, 70 L. Ed. 624. Suffice it to say that where the agreed facts are the ultimate facts as distinguished from merely evidentiary facts, the ultimate facts thus agreed to have the force and effect of a special verdict. If, however, the agreed facts are not the ultimate facts, or if they are such as far as they go but do not fully cover the material issues in the case, and evidence is adduced upon these other material issues, the facts cannot be inquired into on appeal in the absence of a motion for judgment. In the case at bar the agreed statement of facts contains items of evidence and to that extent at least cannot be considered as a special verdict upon ultimate facts, but it also contains some ultimate facts. Indeed, in a case of this kind involving the validity of bonds depending upon the detailed compliance with the statutory provisions applicable to their issuance, it is somewhat difficult to distinguish between evidentiary and ultimate facts. It has been held that where evidence is adduced to sup-

plement the agreed statement of facts and such evidence is upon immaterial matters, that the agreed statement can be considered in effect as a special verdict. On the whole, it is clear that where the admissions in the pleading, together with the ultimate facts stipulated to, require a judgment in favor of the defeated party, the judgment should be reversed. For it would seem clear that the stipulation of the parties as to an ultimate fact so far as it goes is at least equivalent to an admission in the pleadings, and that where the admissions in the pleadings, together with the stipulated ultimate facts require judgment in favor of the plaintiff, it is an error of law reviewable on appeal if the court enter judgment for the defendant. It follows that even though some of the facts material to the theories advanced in the complaint or on the trial are not covered by the admissions in the pleadings or stipulations of ultimate facts but are left to a determination from the evidence, if nevertheless the plaintiff is entitled to judgment upon the ultimate facts as stipulated to, the fact that the parties introduced evidence upon allegations material upon other theories would not deprive the appellant of the right to a reversal if upon the admitted facts judgment should have gone for appellant.

The importance of these observations in the case at bar lies in the fact that the allegation in the complaint tending to establish privity between appellant and the appellee were all denied and that the stipulated facts did not cover these allegations and that evidence was adduced with relation thereto. In so far as these allegations are material to the plaintiff's right of recovery upon any theory, he must fail upon this appeal. It must therefore be assumed that there was no privity between the appellee and the appellant. Consequently, appellant cannot recover from the appellee upon the theory of money had and received. (Aetna Life Ins. Co. v. Town of Middleport, 124 U. S. 534, 8 S. Ct. 625, 31 L. Ed. 537; City of Henderson v. Winstead, 185 Ky. 693, 215 S. W. 527; Swanson v. City of Ottumwa, 131 Iowa, 540, 106 N. W. 9, 5 L. R. A. (N. S.) 860, 9 Ann. Cas. 1117.) Its action, if any, upon that score, should be against the contractor. Nor can the appellant recover upon the theory that the work, labor, and materials furnished by the contractor to the city were furnished by it. While we base our decision upon this matter upon the state of the record, we may say that the evidence introduced, although confidently asserted by the appellant to support

its contentions in that regard, is insufficient therefor.

The conclusion we have arrived at with reference to the rights of the parties upon the theory of money had and received and implied contract for the performance of work and the furnishing of materials is also necessitated by an entirely different view of the situation as disclosed by the stipulated facts. It is stipulated that at the time the work and labor were performed and materials furnished (and the money was furnished by the appellant to the contractor) the indebtedness of the city equalled the limit fixed by the Constitution of the state (3 per cent.). That constitutional provision is as follows: "No city, town, township or school district shall be allowed to become indebted in any manner or for any purpose to an amount, including existing indebtedness, in the aggregate exceeding three (3) per centum of the value of the taxable property therein, to be ascertained by the last assessment for state and county taxes previous to the incurring of such indebtedness, and all bonds or obligations in excess of such amount given by or on behalf of such city, town, township or school district shall be void; provided, however, that the legislative assembly may extend the limit mentioned in this section, by authorizing municipal corporations to submit the question to a vote of the taxpayers affected thereby, when such increase is necessary to construct a sewerage system or to procure a supply of water for such municipality which shall own and control said water supply and devote the revenues derived therefrom to the payment of the debt." Const. art. 13, § 6.

Thus, the town was without authority to create a direct obligation to pay for the work and materials or for the money furnished therefor and was equally without authority to establish such obligation by implication. The law will not imply a contract to pay where an express agreement to do so would be illegal and void. This subject is much discussed in the briefs, but we content ourselves with a citation of the decision of the Supreme Court in Litchfield v. Ballou, 114 U. S. 190, 192, 5 S. Ct. 820, 821, 29 L. Ed. 132, where, in a somewhat similar situation, the court said: " * * * There is no more reason for a recovery on the implied contract to repay the money than on the express contract found in the bonds." This decision was followed by the Supreme Court of Montana in State v. Helena, 24 Mont. 521, 63 P. 99, 55 L. R. A. 336, 81 Am. St. Rep. 453. It follows that the appellant cannot recover upon the theory of an implied contract to pay for the work, labor, and material furnished by the contractor for the performance of the work by him and cannot recover for money had and received.

The appellee contends that as the case was tried in the court below on the theory that the bonds are invalid no other theory can be considered by this court. In order to support this contention appellee applied to the court for an order directing that the briefs in the trial court be made a part of the record. This application was denied. Assuming that it was appropriate to consider such briefs in order to determine whether or not there is a change of theory in the appellate court, it is necessary that they be incorporated in the bill of exceptions and in no other way could they properly be considered by us. We do not wish to be understood, however, as suggesting this as a proper practice. The theory upon which the case is tried must be derived from the method in which the trial is conducted, the evidence offered, objections made and the rulings of the court invoked and not from the argument offered at the conclusion of the trial. It does appear from the opinion of the trial judge which is incorporated in the transcript entitled "Decision" that, in answer to the proposition advanced by the defendant that the general question presented in the case was whether or not the town was liable for the debt represented by the bonds of a special improvement district, which are by their terms payable from special funds derived from special assessment upon property within the district, the court, in commenting on the foregoing statement of the issue of law involved, said: " * * * Plaintiff contends that the town never acquired jurisdiction to create a special improvement district, and that the bonds issued were by the court declared to be invalid after the contract, for which the bonds were delivered, had been fully performed." Appellant states in its brief that this contention was made in answer to a special proposition advanced by the appellee. With some hesitation, after considering the entire record, we conclude that the appellant is entitled to a consideration upon the record of its rights in the event that the bonds in question are legal. We reach this conclusion in part because of the evident reluctance of either party to take a decided stand on the appeal as to the validity or invalidity of the bonds in question. The appellant insists that the bonds are legal obligations en-

forceable by it, not only because of the fact that they were properly issued, but also because it occupies the position of the purchaser for value before maturity, and entitled to urge the rights of such a purchaser of negotiable bond. The appellee, on the other hand, argues propositions which might lead to the conclusion that the bonds are void, but does not insist upon the invalidity of the bonds, and in taking this somewhat equivocal position is no doubt influenced by the fact that a direct admission that the bonds are invalid would bring the case squarely within the contentions advanced by the appellant predicated upon the failure of the town to issue valid bonds when it had agreed to pay for the work with bonds. We think there is no sufficiently clear-cut indication in the record as to the theory upon which the case was tried as to prevent the consideration of the rights of the appellant on the theory that the bonds are valid. We therefore proceed with the consideration of the preliminary question as to the validity of the bonds of the special improvement district.

These bonds are not obligations of the town. On their face they are payable from funds derived from a collection of a special tax and assessment which is a lien against the real estate within the improvement district, and are payable by the treasurer of the town of Ryegate to the bearer from such fund. It has been held by the Supreme Court of Montana in Stanley v. Jeffries, and Stanley v. City of Great Falls, 86 Mont. 114, 284 P. 134, 139, 70 A. L. R. 166, that with respect to such bonds "there is no duty or obligation resting upon the city other than to enforce and obey the provisions of the special improvement district laws; if this is done, and still a loss is suffered by reason of deficiencies in that law, the loss falls upon the holders of the bonds and warrants, and not upon the city." The significance of this holding is emphasized by the fact that the Legislature of the State of Montana undertook to provide a method by which the municipality, with the approval of the majority of its voters, might assume and agree to pay such outstanding bonds. It was held that as to prior issued bonds the effect of this legislation was to permit taxation for private purposes in violation of the prohibition of the Constitution of Montana in that regard. Const. Mont. art. 12, § 11. It follows that a judgment against the town itself would only be appropriate because of the peculiar rules necessarily followed in the federal courts to protect those who invoke its process which requires the indirect method of enforcing the obligation of the district by a judgment against the authorities having power to levy and collect taxes on the district payable from a fund raised by taxes levied upon the property in the district. It is contended by appellant that this peculiar rule makes appropriate and necessary a judgment in this case in its favor and against the town in the event that the bonds are valid. This position is sustained by the cases following Jordan v. Cass County, 3 Dill. 185, Fed. Cas. No. 7517, supra. It is true that in most of these cases the bond purported to be the bond of the defendant municipality, but the principle that the judgment should run against the municipal corporation empowered to levy and collect the taxes within the unincorporated area liable for the tax would apply with equal effect in the case at bar.

In view of our conclusion with reference to our power in this case to consider the facts, it will be necessary to state more in detail facts as disclosed by the pleadings and stipulation with a view of determining the question as to the validity of the bonds, although by way of preface it may be stated that these particular bonds have been declared invalid and the assessment and levy of taxes to pay said bond has been invalidated and the city authorities enjoined from proceeding further thereon in an action brought by individual property holders living in the district against the town of Ryegate and W. O. Wood, county treasurer of Golden Valley county, Mont., to whom taxes levied in the special improvement district were paid or to be paid. Appellant claims it is not bound by this decision, that it is erroneous, and that the federal courts must determine the rights of the bondholder by the law of Montana as established by its statutes and court decisions at the time the contract was entered into which resulted in the issuance of the bond and should not follow subsequent decisions of the state Supreme Court as to the interpretation of the statutes of the state, if it deems such subsequent decisions to be an erroneous interpretation of the law, although as to rights arising thereafter it would accept the decision of the state court as binding and conclusive as to the meaning of the state statutes, even if the federal court believed the ruling of the state court to be erroneous. See Road Imp. Dist. No. 7, of Poinsett County, Ark., v. Guardian Sav. & Trust Co. (C. C. A. 8) 8 F.(2d) 932; see, also, Fetzer v. Johnson (C. C. A.) 15 F.(2d)

145; Board of Education of Town of Carmen, Okl., v. James (C. C. A.) 49 F.(2d) 91. With these points in mind we proceed to a further statement of the agreed facts.

The town council of the appellee being desirous of acquiring its system of waterworks including a well, pump, reservoir, pump house, pipe lines, and hydrants, mindful of the fact that the assessed valuation of the property within the city was such that the limits of a bonded indebtedness permissible under the Constitution of Montana without the vote of the people authorizing the increase of a constitutional limit, or of bonds issued therefor, would not pay the entire cost thereof, determined that the amount of $15,000, which was within the constitutional limitation, should be raised by issuing and selling the bonds of the town. In order to pay the balance of the expense of such waterworks the council decided to establish a special improvement district (No. 4) within the boundaries of the town covering a large part, but not all, of the habitations and buildings therein. The well, pump and pump house, and reservoir were to be located outside of this district. Within the district water mains and hydrants were to be installed. It was estimated and stated in the contract for the work that the $15,000 would take care of the cost of all the property located outside the proposed special improvement district and that the funds derived from the sale of the bonds of said district would pay the cost of the improvements within the district. With this end in view the city issued $15,000 of general bonds of the town which were purchased by the Security Bridge Company, the contractor, on April 14, 1920, and received by the appellant on May 29, 1920. On December 30, 1919, the town council passed its resolution of intention to establish special improvement district No. 4 for the purpose of raising all additional funds over and above $15,000 to pay for said water system and improvements. Due notice was given of the passage of this resolution, and on February 17, 1920, a resolution was passed by the town council establishing the district. The improvements as described in these two resolutions are as follows: "Section 6. That the character of the improvements to be made in said Special Improvement District is hereby declared to be as follows: The construction of pipes, hydrants and hose connections for irrigating appliances and fire protection; all of which improvements are to be made in accordance with the plans and specifications to be prepared by the engineer of the town of Rye-

gate and to be adopted by the council of said town, and which plans and specifications will then be on file in the office of the town clerk, and to which reference is hereby made and by such reference are made a part hereof to all intents and purposes the same as though said plans and specifications were fully set forth and incorporated at length in this resolution." The resolution also provided that the district to be created was "for the purpose of making special improvements upon and along that portion of Railway Avenue, Second Avenue and the alley between Third and Fourth Avenues, and the alley between Fourth Avenue and the avenue next north of Fourth Avenue, from Harkins Street on the west and the street next east of Second Street on the east, including all avenues, streets and alley intersections."

It is contended that this description is insufficient to justify or describe the installation of a system of waterworks. Section 5226 of the Revised Codes of Montana in force at the time these proceedings were instituted, authorized the creation of special improvement districts for the purpose, among others, of constructing "waterworks, water-mains, and extensions of water-mains; pipes, hydrants, hose connections for irrigating purposes; appliances for fire protection, tunnels, viaducts, conduits, subways, break-waters, levees, retaining walls, bulkheads, and walls of rock or other material to protect the same from overflow or injury by water; the opening of streets, avenues, and alleys; the planting of trees thereon; and to maintain, preserve and care for any and all of the improvements herein mentioned; and the construction or reconstruction in, over, or through property or rights of way owned by such city, of tunnels, sewers, ditches, drains, conduits, and channels for sanitary and drainage purposes, or either or both thereof, with necessary outlets, cesspools, manholes, catchbasins, flush tanks, septic tanks, connection sewers, ditches, drains, conduits, channels, and other appurtenances; pipes, hose connections for irrigating, hydrants and appliances for fire protection; and break-waters, levees, retaining walls and bulkheads; walls of rock or other material to protect the streets, avenues, lanes, alleys, courts, places, public ways, and other property in any such city from overflow by water; and to order any work to be done which shall be deemed necessary to improve the whole or any portion of such streets, avenues, sidewalks, alleys, or places or public ways, or property, or right of way of such city. The city council is also hereby author-

ized to create a district as hereinafter specified, for the purpose of defraying the cost of acquiring private property for the purpose of opening, widening, or extending any street, avenue, or alley within the corporate limits of such city.

"It is further provided that the council shall have the same jurisdiction and powers as in this section above provided, to (before doing any of the work mentioned in this act) require any public service corporation, or company, firm, or person occupying such streets, avenues, or alleys, at their own expense and within a reasonable time to be fixed by the council, place in an underground conduit in such manner as may be directed by the city council, all wires, electric conduits, telephone, telegraph, power, or power transmission lines, or appurtenances thereto, or appliances owned, held, or enjoyed in connection therewith; provided, however, that the whole cost so assessed shall at no time exceed the sum of one dollar and fifty cents per lineal foot, plus the cost of the pipe so laid of the entire length of the water-mains laid in such district."

 The description contained in both resolutions uses the exact language of the statute "pipes, hydrants, hose connections for irrigation purposes." It also includes incidental "appliances for fire protection." These, it will be observed, were to be installed upon and along certain designated streets, so that without reference to the plans or specifications subsequently filed, the length of the pipe (although not the diameter) was fairly disclosed by the resolutions in question. The Supreme Court of Montana has consistently upheld proceedings based upon a very general description of the work to be done in the resolution of intention, and also in the ordinance establishing the district after due notice, supplemented as such description is by the more particular description shown by the plans and specifications on file. In Mansur v. City of Polson, 45 Mont. 585, 125 P. 1002, 1003, the Supreme Court of Montana, speaking through Justice Smith, thus stated the rule in Montana: "These proceedings are purely statutory. The only limitation upon the power of the Legislature is that the property of the citizen shall not be taken without due process of law. An opportunity to be heard must be afforded. See Cunningham v. Northwestern Improvement Co., 44 Mont. 180, 119 P. 554. The contents of the resolution, in so far as they relate to notice of what improvements are contemplated, are for the Legislature to dictate; and, so long as a reasonably comprehensive notice is provided for, the courts have no power to declare it insufficient. Our statute does not require a detailed description of the work to be done, or any description, as such. We have no requirement that the 'nature, locality or description of such improvements' shall be set forth in the resolution. All that is demanded is that the council shall designate the 'character of the improvement.' The Legislatures of sister states have seen fit to require a more detailed description of the contemplated improvement, and the courts of those states have very properly held that the council must comply with the statutory command. The fact that our lawmakers did not see fit to declare that the resolution must contain a description of the work, as is the case in Illinois and California, is good evidence that the general character of the work is all that is necessary to be given in the resolution." See, also, Allen v. City of Butte, 55 Mont. 209, 175 P. 595; Harvey v. Town of Townsend, 57 Mont. 407, 188 P. 897. Indeed, the statute provides that the resolution shall state "the general character of the improvement or improvements which are to be made." Rev. Codes Mont. 1921, § 5227. The appellant claims that the description in the resolution of intention was sufficient to comply with the statute and this contention is not seriously questioned except upon the ground that the real intention of the town was to provide a system of "waterworks" and that the description does not disclose that fact which would best be manifested by including in the ordinance the terms "waterworks, water-mains, and extensions of water-mains," contained in section 5226 of the Revised Codes of Montana for 1921, quoted supra. This criticism would no doubt be just, were it not for the fact that the proposed plan called for the construction of the "waterworks outside the district," the cost whereof was not chargeable upon the district and that nothing was constructed in the improvement district but water mains and hydrants which we think are sufficiently described by the words "pipes, hydrants, hose connections for irrigation purposes and appliances for fire protection." In view of the fact that the plans and specifications and the work done were amply covered by the general description contained in the resolution of intention, the fact that waterworks were to be constructed outside the district for the purpose of furnishing water for the pipes laid in the district would seem to be immaterial, so far as concerns the

description of the work chargeable to the district. We conclude, therefore, that under the decisions of the Supreme Court of Montana the town of Ryegate acquired jurisdiction to proceed with the improvements in accordance with law.

Thereafter, plans and specifications were filed with the clerk, bids for the construction of the waterworks system were made by the Security Bridge Company, the contract was awarded to that company, and a written contract was entered into on April 26, 1920, between the Security Bridge Company as contractor and the town of Ryegate for the construction of the aforesaid improvements. This contract, however, covered the entire system of waterworks both outside and within the special improvement district. It provided for the payment by the town to the contractor for the work done at unit prices, for instance, the price per foot for 4″ cast-iron water pipe, including necessary excavation back fill, valves and "specials, according to plans and specifications," $2.55; for 6″ pipe $3.60; for 8″ pipe $5.044; for hydrants, including auxiliary valves, necessary excavation back fill, $174.70; excavation reservoir $3.17 per cubic yard; concrete $37.50 per cubic yard; roof, etc., for reservoir $1,425; excavation of well $2.75 per cubic yard; concrete for pump foundation, etc., $40 per cubic yard; pumps for well, $2,525; pump house $1,625; rock excavation in drained pump pit $3 per cubic yard. It was provided in the specifications for the contract, but not in the contract proper, that the town has available from the proceeds of general obligation bonds $15,000 cash to apply on the construction of the waterworks system; that this amount, after deducting preliminary expenses, was to be paid to the contractor in cash for the reservoir, pump house, pumping plant, and such of the main water line as it will cover, the balance of the water system to be paid by special improvement district bonds, drawn against special improvement district No. 4. (We omit all reference to sewer system although the contract introduced in evidence would seem to indicate that another district, No. 3, was established for the purpose of constructing sewer system to be constructed by the same contractor as counsel assert that no such sewer system was constructed.) The estimated cost of the improvements within the improvement district was stated in the resolution of intention as required by statute (section 5227) as $28,350. The bonds actually issued therefor was the amount here-inbefore stated, to wit, $45,602.42. The bridge company sold the bonds, both general and improvement district, for 85 per cent. of the par value to the appellant which paid for the improvement district bonds the sum of $38,762.06. Although the construction contract disclosed that the bonds were to be taken at par as a consideration in the construction contract, they were in accordance with the prior agreement between appellant and the Security Bridge Company sold to the appellant by the bridge company at 85 per cent. of the par value thereof. It was stipulated that all the money used by the Security Bridge Company to build and complete the waterworks system and improvements specified in said resolution was derived from the sale of these bonds by it to the appellant and that such money was received as the bonds were delivered by the town to the contractor during the progress of the work in payment for such portions of the work as were completed. It was stipulated that the water system and improvements specified in the resolution of intention were constructed and accepted and that the town has since been and is still receiving the income derived from said system and that the said water system and improvements are now in use. It was stipulated, however, that the gross income derived therefrom for the years 1921 to 1927, inclusive, is $5,545.53 and that the expenditures exceeded that amount by about $1,500; that the interest on the general bonds has been paid from a tax levy upon all the property within the limits of the town, although the special tax levy of 7½ mills therefor has not been quite sufficient to pay the full amount of the interest.

It will be observed that the construction contract does not specifically provide that the amount of special district improvement bonds received by the contractor should be limited to the contract cost of the pipes and hydrants, etc., within the limits of the district, nor did it expressly provide that the $15,000 to be paid to the contractor from the general bond issue should be received by it in full payment of all the work done outside the special improvement district. As we understood counsel for appellee upon the argument, he was disposed to concede that the invalidity of the proceedings leading up to the issuance of the special improvement bonds resulted solely and only from the fact that the contract and proceedings thereafter were so conducted that it was possible to charge upon the property holders within the district a portion of the expense of the work

done outside the district. This contention is amplified by his claim that over $8,000 of the amount assessed upon the property within the district was for cost of improvements installed outside the district or for other unauthorized charges. These figures are based upon the evidence which we are not empowered to consider and are stated merely for the purpose of illustration, for we can only consider the judgment upon the basis of the ultimate facts covered by the stipulation and the admissions in the pleadings. We will now consider the effect of the decree of the District Court of Montana granting an injunction against the enforcement of the only assessment levied by the town upon the special improvement district. Appellant claims that it was not a party to this action and is not bound thereby. We see no escape from this proposition (Road Imp. Dist. No. 7, Poinsett County, Ark., v. Guardian Sav. & Tr. Co. (C. C. A.) 8 F.(2d) 932), nor do we understand that the appellee contends that the decision is res judicata. On the contrary, the appellee claims that its purpose in pleading the judgment enjoining the appellee and the county treasurer from enforcing the assessment levied upon the property in the improvement district was to show that there had been no neglect of duty on its part, and thus to meet the contention that the town or its officers were liable in tort for failure to levy assessments. Notwithstanding this both parties frequently refer to the judgment roll in that case which is attached to the stipulation of facts and have cited statements of evidence, of allegation, and of finding therefrom as supporting contentions made by them on appeal here as to the facts shown by the record to be considered by us. These recitals, however, are not binding on the parties and are not evidence herein. We must, therefore, determine the validity of the bonds upon the agreed facts, although it appears from the record in the District Court that the bonds were attacked by the property holders in the district upon the ground that there was a secret agreement between the officers of the town and the contractor for the increase of the cost of the improvements to meet the discount upon the bonds, of which there is no allegation or proof in the case at bar, thus circumventing the statute with relation to the issuance of such bonds at par as interpreted by the Supreme Court of Montana in the case of Evans v. City of Helena, 60 Mont. 577, 199 P. 445.

 It also appears from the findings and decree of the District Court that the plans and specifications for the improvement, although delivered to the town clerk ten days or two weeks before April 13, 1920, the day before bids were called for, were not presented to the town council or approved thereby until April 13, 1920. It was also stated in the findings in that case that "no notice of any kind was ever given to property holders as Improvement District No. 4, or to anyone else, of the letting of the contract for the construction of the improvements." There is no evidence or allegation in this case on either subject. Appellant claims that no such notice is necessary and we have been unable to find any requirement of the Montana law in that regard and none has been pointed out by the appellee. It was also found as a fact "that there was no sprinkling or parking or boulevard districts in the town of Ryegate, and never have been"; that certain of the property owners, plaintiffs in that case, filed objections within 60 days after letting the contract, but that others had not done so; that the Chicago, Milwaukee & St. Paul Railway, a property owner within the district, had withdrawn its protest against the improvements upon being paid $2,500 by "interested citizens of the town of Ryegate"; that with said petition the protests were sufficient to prevent the improvement and without it were insufficient; that the total cost of pipe used was $17,726.-47 and that the length thereof was 11,838 feet; hence, that the total cost for laying the pipe exceeded $1.50 per foot of pipe plus the cost of the pipe which would amount to $35,473; that the total cost of $45,602.40 exceeded the estimated cost of $28,350; that the improvement installed was a complete system of waterworks and hence was not sufficiently described by the resolution of intention for the construction of pipes, hydrants, and hose connections for irrigation and fire protection. As conclusions of law the District Court of the Fifteenth Judicial District of Montana held that the town never acquired jurisdiction to create the improvement district, that the installation of the system was without authority, that all the proceedings with reference thereto were null and void, that the cost of the system was in excess of that allowed by law, to wit, $1.50 per lineal foot of pipe laid plus the cost of the pipe, that the assessment was for that reason illegal, that the price was increased because of the sale of the bonds at less than par. In the case at bar there is no evidence which we can consider of some of the facts before the District Court for the district of Montana. Its findings are not evidence.

Road Imp. Dist. No. 7, of Poinsett County, Ark., v. Guardian Sav. & Tr. Co. (C. C. A.) 8 F.(2d) 932. There is no evidence with reference to the protest of the property holders, no evidence with reference to the withdrawal of the protest of the Chicago, Milwaukee & St. Paul Ry. Company, no agreed facts as to an understanding between the city authorities and the contractor for increased bid because the bonds could not be sold at par, or that the cost was augmented by the fact that the bonds were sold to appellant below par, or that the plans and specifications were filed the day before the bids were received. It thus follows that we are called upon to pass upon the validity of the bonds upon evidence different from that presented to the District Court of the Fifteenth Judicial District of Montana in the suit by the property holders against the town and county officers. Appellant claims that the suit in the state court was directly inspired by the decision of the Supreme Court of Montana in Evans v. Helena, 60 Mont. 577, 199 P. 445, rendered about a year after the completion of the improvements here involved, to the effect that an agreement between the contractor and the city authorities for an increased contract price to cover the loss to the contractor due to the fact that bonds could not be sold on the market at par, invalidated the contract notwithstanding an express agreement in the contract for the work ordered, that bonds were to be received in payment therefor at par, and that the District Court, having followed that decision in rendering its decree invalidating the proceedings for the assessment and levy of the tax, its decision is neither binding as res judicata nor authoritative as a precedent, so far as the federal courts are concerned, because we are bound as a federal court to determine the law under the decisions of the Supreme Court of the state in force at the time the contract was entered into and the bonds issued. It is claimed that the decision of Evans v. Helena, supra, was in effect a reversal of principles theretofore applied by the Supreme Court of Montana, and was also an erroneous interpretation of its previous decisions and of the statute interpreted therein.

However, we do not find that the decision in Evans v. Helena, supra, is a departure from the prior decisions of the Montana Supreme Court, and that court apparently did not consider that it was changing any established rule of law nor did it purport to overrule any of its previous decisions.

The case of Evans v. City of Helena was decided upon suit brought by the property holders within the district to prevent the letting of the contract and the construction of the improvements, and the language used by the court in its decision must be interpreted in the light of that fact. The Supreme Court of Montana has uniformly held that a property holder in an assessment district who stands by and allows improvements to be made in the district which enhance the value of his property is estopped from attacking the validity of the assessment therefor, if the city had acquired jurisdiction in appropriate fashion to establish the district and make improvements described in the resolution of intention so to do. In Power v. City of Helena (1911) 43 Mont. 336, 116 P. 415, 417, 36 L. R. A. (N. S.) 39, it was held that a property holder in special improvement district for sewer bonds who claims that his property was not benefited cannot be relieved by a court of equity from paying cost of improvements on that ground unless he objected to being included with the district and followed up such objection by court action, the court saying: "Presentation of objections to that tribunal is a condition precedent to the right of the property holder to go into a court of equity for relief, in the absence of fraud or lack of jurisdiction appearing upon the face of the council's proceedings."

In Harvey v. Town of Townsend (March, 1920) 57 Mont. 407, 188 P. 897, it was held that to acquire jurisdiction the council must pass a resolution of intention to create the district giving required notice to hear and determine protests, if any. But in Shapard v. City of Missoula (1914) 49 Mont. 269, 141 P. 544, 547, it was held that failure to pass necessary resolution of intention to create a district was not cured or waived by failure of property holders to object. "The conclusive presumption of waiver declared in section 13 of the act is predicated upon the passage of the resolution of intention." In Swords v. Simineo (1923) 68 Mont. 164, 216 P. 806, it was said that an owner of property in a special improvement district cannot sit by and see improvements made benefiting his property and increasing its value, and then refuse to pay for them, citing Power v. City of Helena, 43 Mont. 336, 116 P. 415, 36 L. R. A. (N. S.) 39, supra.

Furthermore, it is provided by statute in Montana, with relation to assessments for improvements made under the law authorizing the establishment of improvement dis-

tricts and the assessment of the costs of such work upon the property within the district, that: "Whenever, by reason of any alleged non-conformity to any law or ordinance, or by reason of any omission or irregularity, any special tax or assessment is either invalid or its validity is questioned, the council may make all necessary orders and ordinances, and may take all necessary steps to correct the same and to reassess and re-levy the same, including the ordering of work, with the same force and effect as if made at the time provided by law, ordinance, or resolution relating thereto; and may re-assess and relevy the same with the same force and effect as an original levy; whenever any apportionment or assessment is made, and any property is assessed too little or too much, the same may be corrected and reassessed for such additional amount as may be proper, or the assessment may be reduced even to the extent of refunding the tax collected. Any special tax upon reassessment or relevy shall, so far as is practicable, be levied and collected as the same would have been if the first levy had been enforced; and any provisions of any law or ordinance specifying a time when, or order in which acts shall be done in a proceeding which may result in a special tax, shall be taken to be subject to the qualifications of this act. Any and every ordinance, or part thereof, of any council, heretofore passed in substantial conformity with this section, is hereby legalized." Section 5252, Rev. Codes Mont. 1921.

It has been held by the Supreme Court of Montana that although this statute does not authorize an assessment where the city authorities have not acquired jurisdiction to establish the district and to order the work done therein, Shapard v. Missoula, supra, when the jurisdictional facts exist and the work has been done without apparent protest there seems to be no impediment in the statute or decision of the Supreme Court of Montana against such reassessment. Where jurisdiction has been acquired by the city authorities to form the improvement district and go forward with the work, the remedy for subsequent errors apparently is not governed with the strictness usually applied to proceedings in invitum, thus in Pool v. Townsend, 58 Mont. 297, 191 P. 385, decided by the Supreme Court of that state in July, 1920, a decree of the lower court was reversed where that court had declared an entire assessment invalid although the municipal authorities had acquired jurisdiction over a part of the plaintiff's land to impose a lesser tax. The court held that although a portion of a special improvement tax was illegal because imposed upon land not within the town limits at the time the district was created, a judgment enjoining the collection of the entire tax, a part of which was on property properly included in the district and therefore justly due, was too broad. Decree was modified to apply only to that portion illegally imposed. If by reason of the method in which, in the case at bar, the town entered into its contract with the contractor for the construction of the waterworks the property holders within the district have been assessed for work done outside the district with which they should not have been assessed, the contract price of the work done within the district is properly chargeable to the property within the district and it would seem that upon the principle applied in Pool v. Townsend, supra, it could properly be assessed therefor. It will be observed here that we are not dealing with the general power of a city to assess upon property within the district improvements installed outside the district, such as wells to supply water for the pipes within the district, as in the case at bar, as to which we express no opinion, but with the power of the city under the ordinances it has adopted which, as in the case at bar, confine the improvements authorized to pipe lines, etc., within the district, to assess property within the district for improvements therein.

From these cases we conclude that the property within the district was properly assessable for that portion of the contract price for fire hydrants and pipes laid therein; that is to say, we conclude that the town council had jurisdiction to order such work to be done. Moreover, the statute itself not only authorizes but expressly provides for a reassessment where for any reason the assessment made is invalid or claimed to be. Section 5252, Rev. Codes Mont. 1921, supra. The contract price of the work done within the district is readily ascertainable from the contract, plans, and specifications. The plan would indicate about 1,425 feet of pipe laid outside the district; of this not more than 841 feet could be 8″ pipe, and the balance was probably 6″, giving a contract cost of about $6,341.04 for the pipe outside the district, and $28,802.25 for the cost of the pipe within the district, to which should be added the contract price for fire hydrants of $2,267.20 and a proportion of the engineering costs pro rated thereto, being about $1,864.17 plus cost of printing bonds, $52,

making a total of $32,985.62. The statute of Montana authorizing the formation of special improvement districts (section 5226, Rev. Codes Mont. 1921) ends with the following proviso: "Provided, however, that the whole cost so assessed shall at no time exceed the sum of one dollar and fifty cents per lineal foot, plus the cost of the pipe so laid of the entire length of the water-mains laid in such district." The length of the pipe laid within the district is 10,413 feet. At $1.50 per lineal foot would be $15,619.50, the cost of all the pipe as found by the district court for the Fifteenth judicial district of Montana was not in excess of $17,726.47, both outside and inside the district, or an average of about $1.50 per foot, making a total of $3.00 per foot for 10,413 feet within the district, or about $31,239 for pipe, to which, if we add cost of engineering, hydrants, etc., we have around $35,000; the exact amount depending upon whether or not incidental expenses are limited to within the maximum stated in the proviso. We express no conclusion as to the meaning or effect of the above quoted proviso, although we have indicated its possible effect, for the reason that its interpretation is one of considerable difficulty and one peculiarly of local law which may be decided by the Supreme Court of Montana before the matter arises on a new trial of this case. We refer to the case of Reeve v. City of Billings, 57 Mont. 552, 189 P. 768, as indicating the history of this proviso which was borrowed from one statute concerning the establishment of waterworks and consolidated with the more general provisions of section 5226, supra.

There is, therefore, no inherent difficulty in making the appropriate deductions to confine the assessment to the improvements within the district, and to the maximum limit allowed by law therefor.

We now consider the question as to an agreement to sell the bonds below par. There is no allegation in the pleadings in relation thereto other than the allegation in the answer that the appellant purchased the bonds at 80 per cent. of their par value ($36,481.94) and the allegation, as to the nature and allegations of the above-mentioned complaint filed by the property owners in the district court for the Fifteenth judicial district. The stipulation of agreed facts states that the appellant purchased the bonds of the Security Bridge Company for $38,762.06, being 85 per cent. of their par value, in accordance with a prior "agreement between them," i. e., prior to the construction contract. Nothing more is disclosed by the agreed facts to bring the case at bar within the principles of the decision of the Supreme Court of Montana in Evans v. Helena, supra. The appellant offers to rebate the 15 per cent. discount it received when it purchased the bonds and claims a judgment for the amount it paid only. This deduction would seem to satisfy the principle announced by the Supreme Court of Montana in Evans v. Helena, supra, i. e., that the property owners in the district should not suffer a loss because the bonds are taken by the contractor upon a discount basis. To carry out the principle under the circumstances of this case it would also be necessary to limit the recovery to the improvements within the improvement district at the amended contract price, that is, at 85 per cent. of $31,069.45 (contract price of water mains and hydrants within the district), which equals $26,409.03, to which should be added engineering costs for the same and cost of printing bonds and other incidental or preliminary expenses. We do not expressly hold that this 15 per cent. deduction should be made for the reason that the record does not raise that question effectively on this appeal and for the further reason that in conformity with the settled policy of the federal courts we prefer to follow, rather than to lead, in the interpretation of a state law where under the circumstances it is permissible. If the appellant makes good on its offer to waive the 15 per cent. discount advantage it now has, we have indicated the appropriate application thereof to the facts in the case.

As to the excessive contract price over the approximate statement thereof in the resolution of intention, the contract contains the basis of the cost of the improvement, and under the Montana decisions we hold that the property owners cannot now avail themselves of this discrepancy where they have stood by and allowed the improvements to be made without seeking injunctive relief in the courts. See Swords v. Simineo, 68 Mont. 164, 216 P. 806.

We might order a judgment upon the admitted facts (see Northern Pacific Ry. v. Van Dusen Harrington Co. (D. C.) 34 F. (2d) 786) if they covered the facts necessary to an apportionment of the cost of pipe, etc., to the district; but these details are shown by evidence supplementary to the agreed facts.

Judgment reversed.